UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARC WACHTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-02428-GCS |
| | ) |
| LATOYA HUGHES, and | ) |
| JEFFREY WEHKING,[1] | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Marc Wachter, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Centralia Correctional Center ("Centralia"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights related to treatment he received for his Autism Spectrum Disorder ("autism"). Now pending before the Court are Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 70), Plaintiff's Motion for a Temporary Restraining Order (Doc. 81), Plaintiff's Motion for the Court to Order (Doc. 84), and Defendants' Motion to Strike the Plaintiff's Motion for the Court to Order (Doc. 88). For the reasons stated below, Plaintiff's Motion for Leave (Doc. 70) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion for a Temporary Restraining Order (Doc. 81) is **DENIED**. Defendants' Motion to

---

[1]   Defendant Daniel Monte is no longer the Warden of Centralia Correctional Center. (Doc. 89, p. 1). In accordance with Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to terminate Defendant Daniel Monte from this case and substitute Jeffrey Wehking, in his capacity as the Warden of Centralia, in his stead.

Strike (Doc. 88) Plaintiff's Motion for the Court to Order (Doc. 84) is **GRANTED IN PART AND DENIED IN PART**. The remainder of Plaintiff's Motion for the Court to Order (Doc. 84) that survives Defendant's Motion to Strike (Doc. 88) is **DENIED**.

## BACKGROUND

### A.    Plaintiff's First Amended Complaint

Plaintiff filed this suit on July 13, 2023. (Doc. 1). In his First Amended Complaint, filed on August 22, 2023, Plaintiff alleged he was diagnosed with autism in July 2020. (Doc. 13, p. 23). His autism affects all aspects of his life, including his communication and learning abilities, as well as his motor functions, sleep, and work. *Id.* Plaintiff has been denied mental health treatment and services for his autism since his diagnosis. *Id.* at p. 23-24. He was also fired from prison employment due to his symptoms. *Id.* at p. 23.

Due to his autism, Plaintiff is housed in a single cell without a cellmate. (Doc. 13, p. 25). On July 5, 2023, Plaintiff was informed that he would be housed with a cellmate. *Id.* When Plaintiff tried to explain his diagnosis, he was wrongly told that medical "has no say in security. They only suggest." *Id.* Plaintiff was then forced to refuse housing to avoid sharing a cell. *Id.* When he began to pack his property to be moved, a correctional officer called Plaintiff derogatory names, berated him, yelled at him, and blocked his path. *Id.* at p. 26. Plaintiff then had a panic attack. *Id.*

On February 5, 2024, the Court completed its preliminary review of Plaintiff's First Amended Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 17). Based on the above facts, Plaintiff was permitted to proceed on the following claims:

> **Count 2:** Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (2006), and Rehabilitation Act ("RA"), 29 U.S.C. §§ 794-94e, claim against Latoya Hughes, in her official capacity as the director of the IDOC, for double celling Plaintiff despite his autism diagnosis.
>
> **Count 4:** Eighth Amendment claim against Jeffrey Wehking, in his official capacity as the Warden of Centralia, for denying Plaintiff medical and mental health treatment for his autism.

*See id.* at p. 2, 4-5.[2]

**B.   Plaintiff's Proposed Second Amended Complaint**

On February 3, 2025, Plaintiff filed a Motion for Leave to File an attached Proposed Second Amended Complaint. (Doc. 70, 70-1).[3] Plaintiff alleges he was diagnosed with autism by Dr. B, a board-certified psychiatrist,[4] in Centralia's health care unit. (Doc. 70-1, p. 7). Plaintiff has been denied the necessary services that were ordered for him, including interpretive services related to Plaintiff's lack of emotional reciprocity and medical and mental health appointments to address Plaintiff's difficulty with non-verbal communication. *Id.*

On April 26, 2021, Plaintiff was not provided interpretive services during a general medical appointment. (Doc. 70-1, p. 7). Due to the absence of such services, he was

---

[2]   Counts 2 and 4 are the only surviving claims in this case. Accordingly, the Clerk of Court is **DIRECTED** to terminate Defendants Director of IDOC, Christine Vineyard, and Wexford Health Sources, Inc. from this case.

[3]   On November 27, 2024, Plaintiff attempted to file a Second Amended Complaint. (Doc. 51). However, the Court struck that Second Amended Complaint for failure to underline new allegations in compliance with Local Rule 15.1(b)(2). (Doc. 64).

[4]   The full name of the doctor is illegible, so the Court refers to her as "Dr. B." (Doc. 70-1, p. 7).

"unable to incorporate the available non-verbal information" and was "deceived" by a medical professional. *Id.* This "deception" resulted in permanent physical injury. *Id.*

On or around February 25, 2022, Plaintiff was assigned to a single cell due to his autism. Jeffrey Wehking ordered Plaintiff to be double celled on July 5, 2023. (Doc. 70-1, p. 8). In response, Plaintiff underwent a 10-day hunger strike which resulted in permanent physical injury. *Id.*

For the two years following his diagnosis, Plaintiff requested updates on services for his autism. (Doc. 70-1, p. 8). Centralia supervisory staff lied to Plaintiff and said that they were waiting on new tests. *Id.*[5] Additionally, Plaintiff unsuccessfully requested assistance for his autism from Dr. B, Dr. C, and Dr. Bednarz, and asked for guidance on how to get resources from security staff, nurses, and various inmates. *Id.* at p. 9.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15(a)(1) provides that "a party may amend its pleadings once as a matter of course" within 21 days of service.[6] FED. R. CIV. PROC. 15(a)(1). In all other cases, "a party may amend its pleadings only with opposing party's written consent or the court's leave." FED. R. CIV. PROC. 15(a)(2). While leave should be freely given when justice so requires, a court "may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading." *Crestview Village*

---

[5] Plaintiff claims he does not know the names of the supervisory staff in order to add them as defendants. Accordingly, the Court refers to them as John/Jane Doe Supervisors.

[6] "If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (e) or (f), whichever is earlier." FED. R. CIV. PROC. 12(a)(1)(B).

*Apartments v. U.S. Dept. of Housing & Urban Development*, 383 F.3d 552, 558 (7th Cir. 2004). *See also Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 357-358 (7th Cir. 2015) (finding that leave may be denied if there is undue delay, futility, or prejudice).

A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted), because "[a]ll pleadings shall be so construed as to do substantial justice." FED. R. CIV. PROC. 8(f). Therefore, a court should provide *pro se* plaintiffs an opportunity to amend their complaints so long as their complaints are without "obviously incurable defects," *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022), and doing so would not "unduly delay the litigation and prejudice the defendants." *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

## DISCUSSION

As a preliminary matter, the Court finds that Plaintiff's Proposed Amended Complaint was not filed with, as Defendants claim, undue delay and bad faith. (Doc. 83).

Plaintiff's Motion for Leave was timely filed. On January 6, 2025, the Court granted Plaintiff a "last extension of time to amend his complaint" and ordered him to file his Second Amended Complaint by January 27, 2025. (Doc. 64). Defendants contend that Plaintiff's Motion for Leave was untimely because it was filed on February 3, 2025. (Doc. 83). However, Plaintiff signed his Motion and Proposed Second Amended Complaint on January 26, 2025. (Doc. 70, 70-1). "[P]risoners filing *pro se* do not have the same access to the court system as other litigants, and, in order for justice to be properly served, their papers should be considered filed when given to prison officials." *Jones v. Bertrand*, 171

F.3d 499, 502 (7th Cir. 1999). *See also Houston v. Lack*, 487 U.S. 266, 275 (1988). Plaintiff signed his motion on January 26, 2025, and the Court presumes he gave it to a prison official that same day. Accordingly, Plaintiff's motion was filed within the deadline provided by the Court.

On the other hand, Defendants are correct that Plaintiff underlines nearly every fact in his Proposed Second Amended Complaint, even though the underlining requirement in Local Rule 15.1(b)(1) is limited to "[a]ll new or amended material." SDIL-LR 15.1(b)(2). (Doc. 83, p. 2). Though many of the underlined facts in the Proposed Second Amended Complaint were previously included in the First Amended Complaint, and thus are not new, the Court declines to find Plaintiff's error amounts to bad faith. Given Plaintiff's alleged difficulties with communication and his *pro se* status, the Court will excuse his non-compliance in this instance. *See, e.g*, *Otis v. Demarasse*, 886 F.3d 639, 644-645 (7th Cir. 2018) (explaining that the Seventh Circuit has "long recognized that pro se litigants must be afforded 'leniency . . . on procedural matters.'") (citing *Lovelace v. Dall*, 820 F.2d 223, 228 (7th Cir. 1987)).

The Court now turns to the new allegations in Plaintiff's Proposed Second Amended Complaint.

**A.  Plaintiff's Motion for Leave to File a Second Amended Complaint**

Plaintiff seeks to bring four claims in his Second Amended Complaint:

**Claim 1:** ADA/RA claim against Latoya Hughes, in her capacity as director of the IDOC, for failure to provide reasonable accommodations for Plaintiff's autism.

>    **Claim 2:**    ADA/RA claim against Latoya Hughes, in her capacity as director of the IDOC, for double celling Plaintiff despite his autism diagnosis.
>
>    **Claim 3:**    Eighth Amendment claim against Jeffrey Wehking, in his official capacity as the Warden of Centralia, for denying Plaintiff medical and mental health treatment for his autism.
>
>    **Claim 4:**    Illinois state law claims for neglect, wrongful imprisonment, assault, and trespass against Jeffrey Wehking for placing Plaintiff in segregation and extending Plaintiff's hunger strike by 10 days.

Claims 2 and 3 are identical to Counts 2 and 4 of Plaintiff's First Amended Complaint. Therefore, the Court only considers the new allegations in Claims 1 and 4.

In support of Claim 1, Plaintiff alleges that he was denied interpretive services and medical and mental health appointments to address his autism in violation of the ADA and Rehabilitation Act. (Doc. 70-1, p. 7-8). Specifically, on April 26, 2021, Plaintiff alleges he was denied those services during a medical appointment, such that he was unable to read "non-verbal information" and was deceived by the medical provider, which resulted in "permanent physical injury." *Id.*

The allegations in Claim 1 relate to those in the First Amended Complaint concerning Plaintiff's alleged communication difficulties and denial of treatment and accommodations for autism. (Doc. 13, p. 23-24). Accordingly, the Court finds that Plaintiff states a colorable claim under the Rehabilitation Act against Defendant Hughes for

failure to provide interpretive services at his medical appointment on April 26, 2021, despite his autism diagnosis.[7]

Claim 4 consists of various Illinois state law claims against Defendant Wehking. First, Plaintiff states that Wehking "refus[ed] to do his duty" to ensure Plaintiff received proper medical treatment for his autism. (Doc. 70-1, p. 9). He says that Wehking wrongfully imprisoned him by allowing Plaintiff to be placed in segregation after he refused housing "to stay safe." *Id.* Finally, Plaintiff alleges that Wehking is liable for "assault and battery" for "physically injuring the Plaintiff by extending the Plaintiff's hunger strike for 10 days without reporting to Springfield oversight." *Id.* He further states that "these are all torts of trespass." *Id.*

Plaintiff fails to provide any facts in support of Claim 4. Such bare and conclusory allegations are insufficient to state a claim. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face"). Accordingly, Claim 4 will be dismissed without prejudice as inadequately pled.

In addition to the four designated claims, Plaintiff states that he was unable to add certain supervisors at Centralia as defendants in this case because he does not know their names. (Doc. 70-1, p. 8). Plaintiff alleges that, in response to his requests for updates on

---

[7] "[T]he analysis governing [the ADA and the Rehabilitation Act] is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros v. Illinois Dept. of Corrections,* 684 F.3d 667, 671-672 (7th Cir. 2012). The relief under these statutes is coextensive. *Id.* at 671. As a practical matter, the Court will only consider Plaintiff's claim under the Rehabilitation Act because he is limited to "but one recovery." *Id.* at 672 (citing *Duran v. Town of Cicero, Ill.,* 653 F.3d 632, 639 (7th Cir. 2011); *Calero–Cerezo v. United States Dept. of Justice,* 355 F.3d 6, 11 n.1 (1st Cir. 2004)).

services related to his autism in the two years following his diagnosis, the John/Jane Doe supervisors lied to him, made excuses, and said that they were waiting on new tests. *Id.* A delay in treatment can give rise to a claim of deliberate indifference under the Eighth Amendment where the delay "exacerbated the inmate's injury or unnecessarily prolonged his pain." *Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)); *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). At this early juncture, the Court finds that Plaintiff has adequately alleged a deliberate indifference claim against John/Jane Doe supervisors at Centralia for delaying treatment for his autism.

Accordingly, Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 70) is **GRANTED IN PART** and **DENIED IN PART**. He may proceed on the following claims in his Second Amended Complaint:

**Claim 1:** Rehabilitation Act claim against Latoya Hughes, in her capacity as director of the IDOC, for failure to provide interpretive services at Plaintiff's medical appointment on April 26, 2021.

**Claim 2:** Rehabilitation Act claim against Latoya Hughes, in her capacity as director of the IDOC, for double celling Plaintiff despite his autism diagnosis.

**Claim 3:** Eighth Amendment claim against Jeffrey Wehking, in his official capacity as the Warden of Centralia, for denying Plaintiff medical and mental health treatment for his autism.

**Claim 5:** Eighth Amendment claim against John/Jane Doe Supervisors, in their capacities as supervisors at Centralia, for deliberate indifference in delaying care for Plaintiff's autism.

B.     **Plaintiff's Motion for Temporary Restraining Order**

Plaintiff has also filed a Motion for Temporary Restraining Order ("TRO"). (Doc. 81). In his motion, Plaintiff alleges that he has requested treatment for his autism since July 15, 2020, and has not received any except a single cell. *Id.* at p. 3. He states, "I am suffering greatly by now knowing what is wrong and not being able to treat this myself making me totally dependent on IDOC to treat me," and "I am confused and alone and scared I will never get treatment for autism." *Id.* He requests that the Court order Defendants to provide testing and treatment for his autism, including mental health counseling by a specialist in autism, interpretive services for all his mental health appointments, ADA assistive services, and treatment for his PTSD symptoms caused by the denial of treatment for his autism. *Id.* at p. 1.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that the plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2948 (5th ed. 1995)).[8] The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). Plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate

---

[8]     Courts analyze requests for TROs and preliminary injunctions under the same standard. *See, e.g.*, *Whirl v. Trans Union*, LLC, Case No. 3:17-cv-01326-JPG-SCW, 2018 WL 501315, at *1 (S.D. Ill. Jan. 22, 2018) (stating that "[w]hen deciding whether to issue a temporary restraining order, the Court applies the same standard as it does to a motion for a preliminary injunction.") (citing *Crue v. Aiken*, 137 F.Supp.2d 1076, 1083 (C.D. Ill. 2001)). Therefore, the Court applies the preliminary injunction standard in determining Plaintiff's motion for TRO.

remedy at law; and (3) irreparable harm absent the injunction. *See Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Regarding the first element, the Court must determine whether "[P]laintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). If Plaintiff meets his burden, the Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.* In addition, the Prison Litigation Reform Act ("PLRA") provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . , and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

Plaintiff seeks testing and treatment for his autism, including mental health counseling by a specialist, interpretive services for all his mental health appointments, ADA assistive services, and treatment for his PTSD symptoms. However, Plaintiff provides no supporting facts or evidence in his motion. His assertions that he is suffering and scared he will never be treated for his autism are too general and vague to show that he faces irreparable harm absent a preliminary injunction. *See, e.g.*, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (reasoning that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy . .

. ."). Plaintiff has not otherwise shown a likelihood of success on the merits of his Rehabilitation Act or Eighth Amendment claims. Moreover, the relief Plaintiff seeks—*i.e.*, testing and treatment for his autism, interpretive and ADA assistive services, and treatment for his PTSD symptoms—is the type of relief that could be awarded if he is ultimately successful at the conclusion of his case. A preliminary injunction is not warranted when the order would give "to plaintiff the actual advantage which would be obtained in a final decree." *W.A. Mack, Inc., v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958). *See also D.U. v. Rhoades*, 825 F. 3d 331, 339 (7th Cir. 2016) (explaining that the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm") (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Thus, a preliminary injunction is not warranted at this stage. Plaintiff's motion for temporary restraining order (Doc. 81) is **DENIED**.

C.  **Plaintiff's Motion for the Court to Order (Doc. 84) and Defendant's Motion to Strike (Doc. 88)**

On March 6, 2025, Plaintiff filed a Motion for the Court to Order. (Doc. 84). Plaintiff claims that "since the 2 additional Plaintiffs and the conspiracy claim [were] omitted actual injury has occurred." *Id.* at p. 2. Plaintiff goes on to allege various instances of mistreatment that inmates "Brittany" and "Samantha" have experienced at Centralia. *Id.* at p. 1-5. First, Plaintiff alleges Brittany and Samantha faced unwanted sexual encounters when housed with another inmate, James Taylor. *Id.* Plaintiff claims he was also housed with Taylor. *Id.* at p. 5. He further alleges that on December 12, 2024, control pod officer

Brittany Hodge failed to intervene when two inmates attempted to assault Brittany "who has tumors all over her face and body." *Id.* at p. 3. Plaintiff further claims that Samantha has been denied screening, diagnosis, and services for her "obvious autism symptoms." *Id.* at p. 4. Finally, Plaintiff alleges that Defendant Wehking "ran an institution of danger, abuse, violence, and reckless disregard" for inmates' safety, medical treatment, and ADA services. *Id.* at p. 5. He claims there is a conspiracy because officials knew James Taylor to be a sexual predator, but nevertheless placed Plaintiff, Brittany, and Samantha in cells with him. *Id.* He also alleges there is a conspiracy because officials have denied treatment to Plaintiff and Brittany for autism, and Samantha for neurofibromatosis. *Id.* He states that their "evidence is not sufficient to maintain a proper claim of conspiracy individually" so "they must be allowed to properly prove this." *Id.* For relief, Plaintiff requests that the Court order Brittany, Samantha, and Plaintiff be housed in the same side of the same housing unit, allow them to file a new case or amend this case to include all three inmates and the conspiracy count, and grant relief addressing their safety, medical treatment, and mental health needs. *Id.* at p. 6.

In response, Defendants request that the Court strike Plaintiff's motion because it raises irrelevant claims and attempts to "manipulate the system" by asking the Court to intervene in the day-to-day operations of the IDOC. (Doc. 88). Federal Rule of Civil Procedure 12(f) provides courts discretion to strike a party's "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F. 2d 1286, 1294 (7th Cir. 1989). However, a motion to strike is properly granted where, as here, it

would "remove unnecessary clutter" and expedite, rather than delay, the case. *See id.* For the reasons stated below, Plaintiff's motion will be stricken in part.

First, the Court notes that Marc Wachter is the only Plaintiff in this case. By "2 additional Plaintiffs," it appears Plaintiff refers to inmates Leonard Badenhorst ("Samantha") and Bryan Stewart ("Brittany"). (Doc. 84, p. 2). On January 6, 2025, the Court denied Plaintiff's Rule 20 motion to join Badenhorst and Stewart because Plaintiff failed to specify common questions of law or fact justifying joinder. (Doc. 66). As the Court denied the motion for joinder, Badenhorst and Stewart remain non-parties to this case. Therefore, the allegations pertaining to them are irrelevant and are appropriately stricken.

Similarly, Plaintiff's motion references a conspiracy claim, even though there is no conspiracy claim in this case. The Court previously found that Plaintiff states four claims in his Second Amended Complaint: two Rehabilitation Act claims for failure to provide reasonable accommodations for Plaintiff's autism and two Eighth Amendment deliberate indifference claims for the treatment Plaintiff received for his autism. These are the only claims in this case. In fact, Plaintiff made no attempt to bring a conspiracy claim in his Second Amended Complaint. Neither can the Court identify any allegations in the Second Amended Complaint which would support a conspiracy claim. Plaintiff's allegations concerning a conspiracy claim are therefore appropriately stricken.

Plaintiff has also not shown that he is entitled to the relief he requests. Specifically, Plaintiff asks the Court to order that Plaintiff be housed in the same side of the same unit as Badenhorst and Stewart, and that the IDOC provide for their safety, medical, and

mental health needs. (Doc. 84, p. 6). First, the Court will not order relief on behalf of Badenhorst and Stewart, who are not parties to this litigation. Second, orders for intervention in the day-to-day operations of the IDOC are "cautiously viewed and sparingly issued." *See Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quoting *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). Prison officials, not the courts, are considered to be in the best position to make decisions that impact the day-to-day operations of their facilities, such as placement decisions. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 482 (1995) (discouraging involvement of federal courts in daily operations of prisons). The Court will not intervene at this time, where doing so would allow Plaintiff to bypass the IDOC's internal policies and procedures, even though Plaintiff may otherwise obtain the relief he seeks for his autism if he prevails in this case. Thus, Defendant's Motion to Strike will be granted in part as to the new factual allegations and requests for relief concerning Badenhorst, Stewart, and a conspiracy claim. (Doc. 88).

On the other hand, the Court declines to strike Plaintiff's additional request for relief to file a Third Amended Complaint to add Badenhorst and Stewart as plaintiffs and a conspiracy claim. (Doc. 84, p. 6). Instead, this request will be denied. "Although leave to amend shall be freely given when justice so requires, leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Villa v. City of Chicago,* 924 F.2d 629, 632 (7th Cir. 1991) (citing FED. R. CIV. PROC. 15(a)). When considering a motion to amend the complaint, courts "not only may but should consider

the likelihood that the new claim is being added in a desperate effort to protract the litigation and complicate the defense; its probable merit; whether the claim could have been added earlier; and the burden on the defendant of having to meet it." *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996) (collecting cases).

On November 27, 2024, Plaintiff attempted to file his initial Second Amended Complaint. (Doc. 51). That complaint included allegations involving Badenhorst, Stewart, and conspiracy. (Doc. 51). However, the Court struck that complaint for failure to abide by Local Rule 15.1(b)(2) and granted Plaintiff a "last extension of time to amend his complaint." (Doc. 64). On February 3, 2025, Plaintiff filed his Second Amended Complaint, in which he makes no mention of Badenhorst, Stewart, or a conspiracy claim. (Doc. 70). Plaintiff clearly chose to exclude those allegations in his Second Amended Complaint. Now, it has been almost two years since Plaintiff has filed his original complaint, and he has had three opportunities to amend his complaint. Plaintiff's delay in seeking to add Badenhorst, Stewart, and a conspiracy claim weighs against granting leave to amend. *See, e.g.*, *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994) (reasoning that "the longer the delay, the greater the presumption against granting leave to amend") (quoting *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 908 (7th Cir. 1988)). Plaintiff's decision to omit Badenhorst, Stewart, and the conspiracy claim when he was given a second opportunity to file a Second Amended Complaint further weighs against his request for leave. *See, e.g., Park v. City of Chicago,* 297 F.3d 606, 613 (7th Cir. 2002) (affirming denial of motion to amend where the plaintiff "knew or should have known of the City's possible violation" such that her "six-month wait constituted undue delay" and would require the

Defendant "to prepare a defense to this claim in little under a week's time"); *Glatt,* 87 F.3d at 194 (affirming denial of motion to amend complaint filed 16 months after the original complaint was filed and more than a year after the discovery of the document upon which the proposed amendment was based).

Furthermore, even if Plaintiff's delay were excused, he would not be able to proceed on claims related to Badenhorst, Stewart, and conspiracy. Federal Rule of Civil Procedure 20 bars plaintiffs from bringing unrelated claims in a single lawsuit. *See, e.g.*, *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (complaint raising unrelated issues against different defendants "should be rejected" by district court in accordance with Rule 20). The allegations which Plaintiff seeks to include in the Third Amended Complaint are entirely separate from the claims in this case, which concern accommodations and treatment Plaintiff received for his autism. Therefore, Plaintiff would likely not be able to proceed on claims related to mistreatment of Badenhorst, Stewart, and conspiracy. Courts need not grant leave to amend a complaint if an amendment would be futile. *See Zimmerman v. Bornick*, 25 F.4th 491 (7th Cir. 2022). *Accord Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021); *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011).

Due to Plaintiff's delay and the futility of any amendments to include the stricken allegations concerning Badenhorst, Stewart, and conspiracy, the Court declines to grant Plaintiff leave to file a Third Amended Complaint. Accordingly, Defendant's Motion to Strike (Doc. 88) is **GRANTED IN PART** as to the new factual allegations and requests for relief concerning Badenhorst, Stewart, and a conspiracy claim. Defendant's Motion to

Strike (Doc. 88) is **DENIED IN PART** as to Plaintiff's Motion For Court to Order, which requests leave to file a Third Amended Complaint. Plaintiff's Motion for the Court to Order (Doc. 84) relating to the request for leave to file a Third Amended Complaint, which survives Defendant's Motion to Strike is **DENIED**.

## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 70) is **GRANTED IN PART** and **DENIED IN PART**. The Clerk of Court is **DIRECTED** to add John/Jane Doe Supervisors as Defendants in this case. Finally, Defendant Jeffrey Wehking, in his capacity as Warden of Centralia, is **DIRECTED** to assist Plaintiff in identifying the John/Jane Doe Supervisors.

2. Plaintiff's Motion for Temporary Restraining Order (Doc. 81) is **DENIED**.

3. Defendant's Motion to Strike (Doc. 88) regarding Plaintiff's Motion for the Court to Order (Doc. 84) is **GRANTED IN PART** as to the factual allegations and requests for relief concerning Badenhorst, Stewart, and a conspiracy claim, and **DENIED IN PART** as to Plaintiff's request for leave to file a Third Amended Complaint.

4. Plaintiff's Motion for the Court to Order (Doc. 84), which survives Defendant's Motion to Strike, and which requests leave to file a Third Amended Complaint is **DENIED.**

IT IS SO ORDERED.

DATED: May 9, 2025.

Digitally signed by Judge Sison
Date: 2025.05.09 13:35:15 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**